Daniel Levester SCONIERS, Plaintiff,

v.

Dr. Charles JARVIS, Dr. Kargas, et al., Defendants.

No. 77–3217.

United States District Court, D. Kansas.

July 25, 1978.

Daniel Levester Sconiers, pro se.

James P. Buchele, U. S. Atty., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, District Judge.

This is a *pro se* civil rights action filed by an inmate of the United States Penitentiary, Leavenworth, Kansas. Plaintiff contends that the named defendants, the physician and the psychiatrist at the penitentiary, have caused medication to be administered to him against his will and in violation of his first amendment rights.

Summons issued, and the matter is presently before the court upon defendants' motion for summary judgment. The court has thoroughly considered the complaint as well as defendants' motion together with its supporting memorandum, affidavits and exhibits. Plaintiff has filed no opposing affidavits or other response to defendants' motion.

The precept according to which defendants' motion must be determined is that summary judgment shall be rendered if the pleadings together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, Rule 56(c), Fed.R.Civ.P. Subsection (e) of Rule 56 further details our deliberation:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

For the reasons which follow, the court finds that summary judgment against plaintiff is appropriate, and it shall be so ordered.

Since plaintiff has not responded to defendants' summary judgment motion there has been no showing that there exists a genuine issue of material fact for trial. Even considering defendants' motion against the allegations of the complaint, which we are not required to do, the facts are not in dispute.

Through numerous affidavits and copies of medical and administrative records, defendants have presented ample evidence that plaintiff's mental and physical condition has been severe enough to present a substantial threat to his own safety as well as that of other inmates. The most frequent diagnosis of plaintiff's condition is paranoid schizophrenia. The record is replete with reports of plaintiff's bizarre and frequently hostile or destructive behavior as well as irrational and incoherent speech and ideation. Plaintiff has a lengthy medical history which originated prior to his incarceration at Leavenworth and includes incidents of self-mutilation, physical destruction of a six-man cell, unprovoked fights with other inmates, uncontrolled screaming, involuntary hospitalization and segregation, plus voluntary and involuntary treatment with a variety of major and minor tranquilizing drugs.

On certain occasions plaintiff has exhibited overtly psychotic behavior within the Leavenworth prison. At these times it has been the professional judgment of both defendant doctors that a medical emergency existed necessitating treatment. Based upon observation of plaintiff's behavior and his medical history, the defendants believed that plaintiff might harm himself or others. They therefore authorized the injection of psychotropic medication to relieve the severity of his condition.

Psychotropic medication is shown to be "a major tranquilizer which acts to restore the thinking processes of an irrational and psychotic patient to . . . normal functioning." (Defendants' Memorandum, p. 3). It is also averred that the psychotropic drug administered to plaintiff, prolixin enanthate, is "completely accepted and recognized throughout the United States as a proper component of the psychiatric treatment spectrum." (*Id.,* p. 4).

Defendants further allege, without refutation, that the nature of plaintiff's medical problems and the necessity for the treatment has been explained to him; that he has benefited from said treatment; that only such restraint was used as was necessary to properly administer the medication; and that plaintiff had voluntarily taken this medication on numerous occasions.

Summarized, the factual basis of this action is that the defendants, prison physicians, based upon their reasoned judgment, provided plaintiff, a prison inmate, with involuntary medical treatment in order to protect him as well as other inmates from a substantial possibility of harm.

The question of law presented, as succinctly stated in defendants' memorandum, is:

"whether prison officials, and more particularly prison physicians, who are entrusted by law with the duty to care for, treat, and protect the inmates entrusted to their custody, possess the authority to provide involuntary medical treatment to an inmate when it is deemed medically necessary to do so. . . . ."

It has been repeatedly stated that:

"[T]he basic responsibility for the control and management of penal institutions, including the discipline, treatment and care of those confined, lies with the responsible administrative agency and is not subject to judicial review unless exercised in such a manner as to constitute clear abuse or caprice upon the part of prison officials."

*Paniagua v. Moseley,* 451 F.2d 228 (10th Cir. 1971); *Marchesani v. McCune,* 531 F.2d 459 (10th Cir. 1976), *cert. denied,* 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117; *see also Daugherty v. Harris,* 476 F.2d 292 (10th Cir. 1973), *cert. denied,* 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91; *Black v. Warden, United States Penitentiary,* 467 F.2d 202 (10th Cir. 1972).

Prison officials, such as defendants, not only have the authority but are charged by law with the responsibility to provide for the proper care, treatment and protection of federal prison inmates. 18 U.S.C. § 4001(b)(2) (1978 Supp.); 18 U.S.C. § 4042; *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Moreover, defendants had an affirmative constitutional duty to provide necessary medical treatment regardless of consent because intentional denial of medical treatment or deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976); *Dewell v. Lawson,* 489 F.2d 877 (10th Cir. 1974). Thus, the administering of medical care over the objections of a prison inmate does not constitute the denial of any federal constitutional right. *Cooper v. Ciccone,* Nos. 73CV62–SW–R, 73CV66–SW–R, 73CV73–SW–R, 73CV89–SW–R, 73CV94–SW–R and 73CV312–S–EBH–R, *unpublished* (W.D.Mo. 1973); *Haynes v. Harris,* 344 F.2d 463 (8th Cir. 1965); *Peek v. Ciccone,* 288 F.Supp. 329 (W.D.Mo.W.D.1968). Nor does the inmate's disagreement with the nature or type of medical care provided present a constitutional claim. *Bowring v. Godwin,* 551 F.2d 44 (4th Cir. 1977); *Cates v. Ciccone,* 422 F.2d 926 (8th Cir. 1969). Plaintiff has a right to medical care but not to a type personally desirable to him. *Henderson v. Secretary of Corrections,* 518 F.2d 694 (10th Cir. 1975); *Coppinger v. Townsend,* 398 F.2d 392 (10th Cir. 1968). Therefore, it is clear that the forced administration by prison physicians of tranquilizing drugs to an inmate with a medical history such as plaintiff's is not a violation of federal rights.

We also agree with defendants that plaintiff's claim that his first amendment rights have been infringed does not alter our judgment. Defendants "firmly deny that plaintiff expressed any religious objections whatsoever to the administration of the medication." (Defendants' Memorandum, p. 8; Exhibits B, C). Plaintiff has not responded by setting forth specific facts challenging this denial. However, even assuming plaintiff did protest to the medication on religious grounds, he has not made a prima facie showing that he is entitled to a hearing on such a claim. It has not been demonstrated that plaintiff is a sincere adherent of an established religion which, as a basic tenet, prohibits the use of psychotropic medication. *See Teterud v. Gillman,* 385 F.Supp. 153 (S.D.Iowa C.D. 1974), *aff'd sub nom. Teterud v. Burns,* 522 F.2d 357 (8th Cir. 1975); *Proffitt v. Ciccone,* 506 F.2d 1020 (8th Cir. 1974).

Moreover, it is a well-established doctrine that federal penitentiary inmates while in the custody of prison officials "have only such rights in the practice of their religion as can be exercised without impairing the requirements of prison discipline." *Long v. Harris,* 332 F.Supp. 262, 270 (D.Kan.1971), *aff'd,* 473 F.2d 1387 (10th Cir. 1973). As noted earlier, defendants have presented ample evidence that plaintiff's psychotic behavior posed a substantial threat to safety and security within the institution. Under such circumstances, it can hardly be said that defendants acted in an arbitrary or capricious manner by administering psychotropic medication against plaintiff's will and even over vague religious objections. *See Smith v. Baker,* 326 F.Supp. 787 (W.D.Mo.1970), *aff'd,* 442 F.2d 928 (8th Cir. 1971); *Jehovah's Witnesses in State of Washington v. King County Hospital Unit No. 1,* 278 F.Supp. 488 (W.D.Wash. 1967) (three-judge court) *aff'd,* 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968).

The court finds, in agreement with defendants' well-written and documented Memorandum in Support of Motion for Summary Judgment, that the defendants' action in administering necessary medical care to plaintiff was "clearly authorized and strictly in accordance with their professional, statutory and constitutional responsibilities to care for and treat the inmates entrusted to their supervision." (Defendants' Memorandum, p. 11). Thus, defendants are entitled to judgment as a matter of law. Accordingly, it is

ORDERED that defendants' motion for summary judgment be sustained; that this action be dismissed and all relief denied; and that the clerk transmit copies of this Memorandum and Order to the parties herein and to the Office of the United States Attorney for the District of Kansas.