**UNITED STATES of America**

v.

**Charles JUAREZ.**

**Crim. Nos. SA79CR102, SA79CR136.**

United States District Court,
W. D. Texas.

June 14, 1982.

Edward C. Prado, U. S. Atty., John E. Murphy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Lucien Campbell, Federal Public Defender, P. Joseph Brake, Asst. Federal Public Defender, San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

SPEARS, District Judge.

After two complete hearings before this Court on separate occasions, the defendant was twice found to be incompetent to stand trial,[1] and that, if released, he would probably be a danger to the safety of the officers, the property, or other interests of the United States. Neither finding has been seriously challenged.[2] Nevertheless, each time

---

1. The defendant received consideration under Title 18 U.S.C. §§ 4247 and 4248 on March 4, 1980 and June 19, 1981. The latest §§ 4247/4248 hearing was held on May 28, 1982.

2. Each time the Medical Center has sent the defendant back to this Court, it has agreed that

the defendant has been committed to the custody of the Attorney General or his authorized representative, he has been returned to this Court on the ground that the Medical Center at Springfield is not equipped to treat him. In addition, the staff at the Medical Center has insisted that the responsibility for defendant's custody and care rests with the State of Texas rather than the Federal Government, despite the repeated refusals of the state to make its facilities available to the defendant.

Since the necessary conditions specified under 18 U.S.C. § 4247 are still present to require that the defendant be committed to the custody of the Attorney General pending a finding that he is competent to stand trial, or that he is no longer a danger to the community, or that suitable facilities for his custody and care are available elsewhere, it is the duty of the Attorney General to supply facilities adequate to care for the defendant at either the Medical Center or some other institution operated by or under contract with the Bureau of Prisons. 18 U.S.C. § 4001 *et seq.*; *United States v. Isaacs*, 349 F.2d 361 (4th Cir. 1965); *Sconiers v. Jarvis*, 458 F.Supp. 37 (D.Kan.1978).

The defendant stands charged by way of indictment with various violations alleged to have occurred within the special maritime and territorial jurisdiction of the United States, to wit: 1) rape, 2) assault with intent to commit a felony other than murder or rape, that is, sodomy, 3) assault with a dangerous weapon, and 4) taking with intent to steal personal property of a value in excess of $100. The state courts are not involved because jurisdiction of these offenses is exclusively in the Federal Court.

Pursuant to this Court's orders of June 29, 1979 and September 7, 1979, the defendant was examined by two psychiatrists for the purpose of determining his competency to stand trial. Both psychiatrists testified that he suffers from mental retardation in the mild to moderate range.[3] A hearing was held on September 19, 1979, and after considering the evidence and the testimony of the examining physicians, the statements of counsel, and the demeanor of the defendant, an order was entered adjudging the defendant mentally incompetent to stand trial.[4]

At the same hearing, the Probation Officer was instructed to determine what state facilities would be available for placement of the defendant. This search led the Probation Officer to Bexar County Mental Health and Mental Retardation (BCMHMR), where the defendant was examined and found to be eligible for treatment under the Texas Mentally Retarded Persons Act of 1977, Tex.Civ.Stat.Ann. Art. 5547–300 (Vernon). It was the recommendation of BCMHMR that the defendant be placed in a highly structured and closely supervised environment, and that the facilities at the State School Annex of the Rusk State Hospital be investigated;[5] however, efforts to place the defendant in a state facility failed, and the United States Attorney moved to commit him to the custody of

he is incompetent to stand trial, and that, except when he is placed in a supervised setting, he remains a danger to the community.

3. Results of psychological testing indicate the defendant functions in the mild to moderate ranges of mental retardation, as described in the American Association on Mental Deficiency's *Manual Terminology and Classification in Mental Retardation*, 1977 Edition. His measured I.Q. is about 54. These results are documented in the reports from the examining psychiatrists, Bexar County Mental Health and Mental Retardation, and in the staff reports from the Medical Center.

4. The September 19, 1979 hearing was the first accorded to the defendant.

5. According to the officials of the Texas Department of Mental Health and Mental Retardation, the State Annex at the Rusk State Hospital was only for juveniles. Commitment to Rusk State Hospital was not possible because there were no state charges against the defendant, and none could be filed because the alleged offenses took place on a military reservation.

the Attorney General, pursuant to Title 18 U.S.C. § 4246.

On March 4, 1980, this Court held a hearing on the government's motion for commitment, wherein it was determined pursuant to § 4247, that all avenues for placement in a state facility had been exhausted; that the defendant remained mentally incompetent to stand trial; and that if released he would probably pose a danger to the officers, property and other interests of the United States. Whereupon, the defendant was committed to the custody of the Attorney General until 1) he should become competent, or 2) his mental condition improved to the extent that he would no longer be a danger, or 3) other suitable arrangements could be made for his custody or care.

After evaluating the defendant, the Medical Center recommended that he be placed in a state facility for the mentally retarded, and he was returned to this Court where a hearing pursuant to Title 18 U.S.C. § 4244 *et seq.* was held on June 19, 1980. After reviewing the evidence, this Court found that the three conditions specified in § 4247 continued to exist and ordered the defendant committed to the custody of the Attorney General until at least one of those conditions ceased to exist. Execution of the order was stayed for thirty (30) days in order to permit additional efforts to be made to obtain suitable arrangements within the state of Texas for the defendant's custody and care. In September of 1980, after the repeated efforts of the Probation Officer to obtain suitable placement were unsuccessful, the defendant was again sent to the Medical Center.

In 1981, the defendant instituted habeas corpus proceedings in the Western District of Missouri, alleging that he was unlawfully committed to the Medical Center. The magistrate to whom the matter had been referred, found that although the defendant's commitment to the Medical Center was lawful, the fact that he could never become competent to stand trial entitled him to consideration for processing under Title 18 U.S.C. § 4247 and § 4248, and recommended that he be returned to the committing court.[6] The findings and recommendations of the magistrate were approved by the district court, and the defendant was returned to this Court for a hearing pursuant to §§ 4247/4248.[7] Significantly, neither the findings and recommendations of the magistrate, nor the order of the district court reflected that the defendant had already received consideration under Title 18 U.S.C. §§ 4247/4248 on two occasions.

The Medical Center has made periodic reports to this Court on defendant's condition. Among other things, the opinion has been expressed by the staff that the defendant should be placed in a facility for the mentally retarded in Texas. They insist that responsibility for this defendant rests with the State of Texas and have even urged in open court that consideration should be given to forcing the state to accept the defendant by arbitrarily dumping him on the doorstep of a state facility, a ploy that this Court finds unacceptable.

In any event, a third §§ 4247/4248 hearing was held on May 28, 1982, at which time a motion to dismiss earlier filed by defendant was considered. After carefully reviewing the motion and the evidence, this Court again finds that 1) the defendant remains mentally incompetent to stand trial, 2) that if released he would probably

---

**6.** The magistrate based his findings on a letter sent March 31, 1981 from the Medical Center to this Court which states that the defendant: 1) has a permanent mental condition and will never attain competency, 2) has not proven himself to be dangerous in a supervised setting, 3) does not fit the description of a repeat sexual offender, 4) has been at the Medical Center for approximately eighteen months, 5) cannot be treated for his mental condition, and 6) has a state of residency that has suitable arrangements for care and custody.

It should be noted that the Medical Center avoided saying that defendant would not be a danger to the community if released from a supervised setting.

**7.** *Juarez v. Petrovsky,* No. 81-3349-CV-S-WRC (W.D.Mo. Jan. 13, 1982).

endanger the safety of the officers, the property, or other interests of the United States, and 3) that suitable arrangements for the custody and care of the defendant are not otherwise available.

Under Title 18 U.S.C. §§ 4244/4246, a procedure is provided for determining the competence of an accused to stand trial, and once a court determines that an accused is mentally incompetent to stand trial, it may commit him to the custody of the Attorney General until he achieves competency or until the pending charges are disposed of according to law.[8] Further, § 4246 provides that if the court, after a hearing as provided in § 4244, finds that the conditions specified in § 4247 [9] exist, the commitment shall be governed by § 4248.[10]

Under § 4248, the commitment runs until competency is restored, or until the ac-

8. Section 4244 provides:

Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.
Section 4246 provides:
Whenever the trial court shall determine in accordance with sections 4244 and 4245 of this title that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law. And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided.

9. Section 4247 provides:

Whenever the Director of the Bureau of Prisons shall certify that a prisoner whose sentence is about to expire has been examined by the board of examiners referred to in title 18, United States Code, section 4241, and that in the judgment of the Director and the board of examiners the prisoner is insane or mentally incompetent, and that if released he will probably endanger the safety of the officers, the property, or other interests of the United States, and that suitable arrangements for the custody and care of the prisoner are not otherwise available, the Attorney General shall transmit the certificate to the clerk of the court for the district in which the prisoner is confined. Whereupon the court shall cause the prisoner to be examined by a qualified psychiatrist designated by the court and one selected by the prisoner, and shall, after notice, hold a hearing to determine whether the conditions specified above exist. At such hearing the designated psychiatrist or psychiatrists shall submit his or their reports, and the report of the board of examiners and other institutional records relating to the prisoner's mental condition shall be admissible in evidence. All of the psychiatrists and members of the board who have examined the prisoner may be called as witnesses, and be available for further questioning by the court and cross-examination by the prisoner or on behalf of the Government. At such hearing the court may in its discretion call any other witnesses for the prisoner. If upon such hearing the court shall determine that the conditions specified above exist, the court may commit the prisoner to the custody of the Attorney General, or his authorized representative.

10. Section 4248 provides:

Whenever a person shall be committed pursuant to section 4247 of this title, his commitment

cused's mental condition has so improved that he will not endanger the officers, property or other interests of the United States, or until suitable arrangements are made for the care of the accused by his state of residence.

██ Commitments made solely under § 4246 are temporary, lasting only so long as necessary to determine the chances of the accused achieving competence. *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *Greenwood v. United States,* 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956); *United States v. DeBellis,* 649 F.2d 1 (1st Cir. 1982); *United States v. Wood,* 469 F.2d 676 (5th Cir. 1972). Once it has been determined that the chance of the accused achieving competence is remote, the committing court must give the accused a hearing pursuant to § 4247 and § 4248. *Jackson v. Indiana, supra,* 406 U.S. at 733, 92 S.Ct. at 1855; *Greenwood v. United States, supra,* 350 U.S. at 374, 76 S.Ct. at 414; *United States v. DeBellis, supra* at 3; *United States v. Wood, supra* at 677.

*Greenwood, supra,* was the first Supreme Court case to interpret the constitutionality of Title 18 U.S.C. § 4244 *et seq.* In that case a federal district court found the conditions specified in § 4247 to be present and committed the defendant to the custody of the Attorney General pursuant to § 4248.

The commitment was appealed to the Court of Appeals for the Seventh Circuit, where it was affirmed. An appeal was then taken to the United States Supreme Court, and that court affirmed the commitment, holding that Title 18 U.S.C. § 4244 *et seq.,* authorizing commitment of an accused

who is found incompetent to stand trial, applies not only to temporary mental incompetency but also to mental incompetency "... which seems more than temporary". *Greenwood, supra* at 373, 76 S.Ct. at 414.

In *Jackson v. Indiana, supra,* the Supreme Court interpreted the constitutionality of a *state* commitment statute. The holding in *Jackson* was that Indiana could not constitutionally commit a defendant for an indefinite period based simply on his incompetency to stand trial. The court discussed the Federal System under Title 18 U.S.C. § 4244 *et seq.* and noted that once it is determined that the accused is not likely to have his competency restored there must be a hearing pursuant to §§ 4247 and 4248. *Jackson v. Indiana, supra,* 406 U.S. at 732–33, 92 S.Ct. at 1855. Once there is a hearing under §§ 4247 and 4248, and the requisite § 4247 findings are made, the defendant may be committed indefinitely. *Jackson v. Indiana, supra* at 731, 92 S.Ct. at 1854; *United States v. DeBellis, supra* at 2, 3; *United States v. Curry,* 410 F.2d 1372, 1374 (4th Cir. 1969).

In returning the defendant to this Court, the magistrate and the district court relied· on *Henry v. Ciccone,* 440 F.2d 1052 (8th Cir. 1971); *Cook v. Ciccone,* 312 F.Supp. 822 (W.D.Mo.1970); and *United States v. Jackson,* 306 F.Supp. 4 (N.D.Cal.1969). As this Court reads those cases, reliance upon them was misplaced.

The defendant in *Henry v. Ciccone, supra,* was an unconvicted inmate committed to the Medical Center under §§ 4244/4246, and not §§ 4247/4248. He filed an applica-

shall run until the sanity or mental competency of the person shall be restored or until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, or until suitable arrangements have been made for the custody and care of the prisoner by the State of his residence, whichever event shall first occur. Whereupon the Attorney General or his authorized representative shall file with the court which made said commitment a certificate stat-

ing the termination of the commitment and the ground therefore: *Provided, however,* That nothing herein contained shall preclude a prisoner committed under the authority of section 4247 hereof from establishing his eligibility for release under the provisions of this section by a writ of habeas corpus. The Attorney General or his authorized representative shall have authority at any time to transfer a prisoner committed to his custody under the authority of section 4246 or section 4247 hereof to the proper authorities of the State of his residence.

tion for a writ of habeas corpus alleging that the Federal Medical Center was a penal institution, not a hospital, and that it lacked facilities to treat mental patients. He asked that he be released to the proper authorities in the state of his residence. The application was denied without a hearing on the ground that any application for commitment to a state institution would have to be addressed to the committing court.

During the time that the defendant was at the Medical Center, the staff recommended that he be returned to the committing court and adjudicated to be competent. It was not until six months thereafter that he was finally returned, and then only on an order from the Court of Appeals for the Eighth Circuit. When that occurred, the appeal of the denial of the habeas corpus became moot, and it was dismissed.

There was no suggestion in *Henry* that the defendant would be a danger to the community, or that suitable facilities were unavailable within the state. The only fact in that case common with the case now before the Court was the initial finding of incompetency; however, in *Henry* the defendant was later determined to be competent, while the testimony here reflects the unlikelihood that the defendant will ever be competent to stand trial.

In *Cook v. Ciccone, supra,* the defendant (Cook) was also an unconvicted inmate of the Medical Center, committed under §§ 4244/4246, and not §§ 4247/4248. He petitioned for a writ of habeas corpus, alleging that his prolonged commitment without treatment was a denial of his constitutional right to a speedy trial, was cruel and unusual punishment, and was in violation of the equal protection clause.

The district court, in ordering Cook returned to the committing court, found that

when a person has been committed under § 4246, and his competency is permanent, or likely to continue for an unreasonable period of time, he should be transferred to the appropriate state authorities. There the defendant was committed under §§ 4244 and 4246, and there was no finding of dangerousness or of unavailability of state facilities. The Court properly held that Cook was entitled to consideration for processing under 18 U.S.C. §§ 4247 and 4248, a right that had not yet been accorded him.[11]

Here, however, the defendant Juarez had been given a hearing pursuant to §§ 4247 and 4248 on two occasions, and each time the three conditions specified in § 4247 had been found to exist.

In *United States v. Jackson, supra,* the Court recognized that the defendant was incompetent and probably dangerous, but made no finding that adequate facilities for treatment were unavailable in the state. On the contrary, the Court assumed that state facilities were available and admonished federal officials to make the state aware of the need. This created a situation where the provisions of §§ 4244 and 4246, which relate to temporary commitments, rather than §§ 4247 and 4248, which encompass commitments of a more permanent nature, were properly invoked.

So it is apparent that the cases cited by the district court in Missouri are inapposite, because none of them involved all three § 4247 conditions, as was the situation in the case *sub judice.* Under the circumstances of this case, the commitment of the defendant to the custody of the Attorney General is governed by § 4248, and he will be subject to discharge if and when any one of the three § 4247 conditions no longer exists. The commitment, therefore,

---

11. *See Maurietta v. Ciccone,* 305 F.Supp. 775 (W.D.Mo.1969) where the District Court for the Western District of Missouri recognized that cases dealing with commitments under § 4246 are different from those cases where commitment is under § 4248 in the following language:

The principles enunciated in the Section 4246 cases cited and noted are not fully applicable to a Section 4248 commitment case because an express finding of dangerousness under Section 4247 was not involved in those Section 4246 cases. *Id.* at 780.

is not unconstitutional. *Jackson v. Indiana, supra,* 406 U.S. at 732–33, 92 S.Ct. at 1855; *Greenwood v. United States, supra,* 350 U.S. at 374–75, 76 S.Ct. at 414–415.

■ Unfortunately, what we have here is a situation in which the federal government, acting through its authorized representatives, has refused to accept its responsibility to provide custody and care for a federal prisoner fully qualified under the law for treatment in a federal facility. The net result is that the defendant has been shuttled back and forth between this Court and the Medical Center, without any meaningful treatment for almost three years, and in a manner that is regrettable to say the least. But the time has come to call a halt to this aimless exercise, and come to grips with the realities involved.

Although the consensus of medical opinion offered at the several hearings was that the defendant would never be competent to stand trial, there was substantial evidence that he is "trainable", the implication being that with proper training he would be less likely to revert to acts of violence. Needless to say, if he should no longer be considered a danger to the community, he would be eligible for discharge from custody.

The Attorney General of the United States determines the place of imprisonment of federal prisoners, 18 U.S.C. § 4082 (1950 and 1982 Supp.); he is charged by law with the responsibility to provide for proper care, treatment and protection of such prisoners, 18 U.S.C. § 4001(b)(2) (1982 Supp.); he is authorized to provide them with mental treatment at Springfield, or elsewhere, 18 U.S.C. § 4005 (1950); and he has the authority to contract with the proper authorities of the state for the subsistence and care of such persons, 18 U.S.C. § 4002 (1982 Supp.). See also *United States v. Isaacs, supra,* at 362; and *Sconiers v. Jarvis, supra,* at 40.

From the record herein it is clear that the defendant is a federal prisoner, and that he needs treatment and training if he is to have a chance to learn how to repress any tendencies he may have toward violence. The Attorney General is fully authorized, and has the duty, to furnish this treatment and training through the Medical Center or at some other facility operated by or under contract with the Bureau of Prisons, and this Court expresses the hope that this will be done without delay.

Coincident with the filing of this memorandum opinion, an order will be entered denying defendant's motion to dismiss, and again committing him to the custody of the Attorney General or his authorized representative, pursuant to Title 18 § 4248, until the defendant is mentally competent to stand trial, or until his mental condition is so improved that if released he will not endanger the safety of the officers, property, or other interests of the United States, or until suitable arrangements are made within the State of Texas for his custody and care.[12]

---

**12.** Further efforts to obtain suitable facilities within the State of Texas have been made since the last hearing on May 28, 1982, but they have been to no avail. Perhaps the Attorney General, having the authority to contract with the state, would be more successful.