**Richard STENSVAD, Plaintiff,**

v.

**Linda REIVITZ, Secretary, Department of Health and Social Services, Terrence Schnapp, Director, Mendota Mental Health Institute, and Dr. James Whitman, Defendants.**

No. 84–C–383–S.

United States District Court,
W.D. Wisconsin.

Jan. 10, 1985.

Diane L. Mader, Schuster & Carroll, Madison, Wis., for plaintiff.

Richard J. Boyd, Asst. Atty. Gen., Madison, Wis., for defendants.

MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff has moved for summary judgment in this action, arguing that state statute, which provides no right to refuse drug treatment to involuntarily committed mental patients, is unconstitutional as a matter of law. Defendants appear to concede, and the Court agrees, that there are no disputed material facts. Accordingly,

this matter is appropriate for summary judgment.

## FACTS

Plaintiff Richard Stensvad is an inmate at the Mendota Mental Health Institute in Madison, Wisconsin, having been committed in 1974 after a jury verdict of not guilty by reason of mental disease or defect of first degree murder. He was diagnosed as suffering from undifferentiated schizophrenia and has been treated with antipsychotic (or psychotropic) drugs virtually continuously during his commitment.

The defendants are Linda Reivitz, the Secretary of Wisconsin's Department of Health and Social Services; Terrence Schnapp, the Director of the Mendota Mental Health Institute; and Dr. James Whitman, plaintiff's treating psychiatrist who has prescribed the drugs for plaintiff's treatment since about 1980.

Plaintiff is presently being administered a bi-weekly twelve and one-half milligram dose of the drug, Prolixin, by injection. Before August 6, 1984, he received regular doses of the drug, Navane, instead. At various other times during his commitment, plaintiff has also been treated by other drugs, including Trilafon and Haldol, and was administered drugs to diminish the side effects of the antipsychotic drug being administered during a given time.

Plaintiff was committed under § 971.-17(1), Wis.Stats., which provides:

(1) When a defendant is found not guilty by reason of mental disease or defect, the court shall order him to be committed to the department [of Health and Social Services] to be placed in an appropriate institution for custody, care and treatment until discharged as provided in this section.

Such a commitment must also be predicated on a finding of present need for commitment, *State ex rel. Kovach v. Schubert*, 64 Wis.2d 612, 219 N.W.2d 341 (1974), and release can be obtained under the provisions of § 51.20, Wis.Stats., after a finding by the committing court that the defendant is no longer dangerous, *State v. Gebarski*, 90 Wis.2d 754, 280 N.W.2d 672 (1979).

Chapter 51 of the Wisconsin Statutes provides for the treatment of the mentally ill. In pertinent part, the chapter provides as follows:

51.59 INCOMPETENCY NOT IMPLIED. (1) No person is deemed incompetent to manage his or her affairs, to contract, to hold professional, occupational or motor vehicle operator's licenses, to marry or to obtain a divorce, to vote, to make a will or to exercise any other civil right solely by reason of his or her admission to a facility in accordance with this chapter or detention or commitment under this chapter. (2) This section does not authorize an individual who has been involuntarily committed or detained under this chapter to refuse treatment during such commitment or detention.

51.61 PATIENTS RIGHTS. (1) ... Except as provided in sub. (2), each patient shall:

    *     \*     \*     \*     \*     \**

(g) Prior to the final commitment hearing and court commitment orders, have the right to refuse all medication and treatment except as ordered by the court under this paragraph, or in a situation where such medication or treatment is necessary to prevent serious physical harm to the patient or to others.... <u>Following a final commitment order, the subject individual does not have the right to refuse medication and treatment except as provided in this section.</u>[1]

(h) Have a right to be free from unnecessary or excessive medication at any time. No medication may be administered to a patient except at the written order of a physician. The attending physician is responsible for all medication which is administered to a patient.... Medication may not be used as punishment, for the convenience of staff, as a substitute for a treatment program, or in quantities that interfere with a patient's treatment

---

**1.** The underlined portion of § 51.61(1)(g) is the specific language under attack in this action.

program. Except when medication or medical treatment has been ordered by the court under par. (g) or is necessary to prevent serious physical harm to others as evidenced by a recent overt act, attempt or threat to do such harm, a patient may refuse medications and medical treatment if the patient is a member of a recognized religious organization and the religious tenets of such organization prohibit such medications and treatment. The individual shall be informed of this right prior to administration of medication or treatment whenever the patient's condition so permits.

The list of patient rights also includes the right not to be subjected to psychosurgery or electroconvulsive treatment without consent. And § 51.61 also provides for enforcement of these rights by a grievance procedure, (§ 51.61(5)), and by court action which does not require the exhaustion of the grievance procedure, (§ 51.61(7)).

Plaintiff has been administered these drugs without his consent, understanding that they would be forcefully administered if he physically resisted. He has allegedly suffered some side effects from the drugs, but expressly concedes that the decisions to administer such drugs have not been made in bad faith, nor has he been subjected to excessive doses. And he concedes that drug treatment has not been administered for reasons of punishment or staff convenience, and that he is not a member of a religious organization which would exempt him from such treatment. In other words, the administration of drugs can be assumed to be compatible with his treatment program, which is not otherwise challenged here.

## MEMORANDUM

Plaintiff argues that various constitutional provisions provide him with a liberty interest in refusing treatment by antipsychotic drugs which is abrogated by opera-

tion of § 51.61(1)(g), Wis.Stats., without due process of law. Plaintiff now concedes that the Eighth Amendment provides no protection under these circumstances since it is applicable only in the prison setting, *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (holding that the Fourteenth rather than the Eighth Amendment provides the basis of any rights applicable to the institutionalized mentally ill). However, plaintiff still asserts that his First Amendment rights are violated because the drugs disturb his generation of thoughts, and that the Fourth, Fifth and Fourteenth Amendments are violated insofar as they protect a right to privacy.

Defendants contend that such drugs are not "mind altering" in the sense that plaintiff asserts. Although this is debatable, the Court will assume that plaintiff's contrary contention is correct. *See Mills v. Rogers*, 457 U.S. 291, 293, note 1, 102 S.Ct. 2442, 2445, note 1, 73 L.Ed.2d 16 (1982) ("It is not disputed that such drugs are 'mind altering.' Their effectiveness resides in their capacity to achieve such effects."). However, defendants do not persuasively argue that plaintiff has no liberty interest in not being treated against his will. In *Rennie v. Klein*, 720 F.2d 266 (3rd Cir.1983), a case which, for practical purposes, is on point with this one, the only issue on which the judges agreed was the existence of such a liberty interest.

Accordingly, the only issue before this Court is whether the statutory scheme in Wisconsin violates the due process clause in failing to provide adequate protection for this interest. The Court concludes that it does so provide in at least two ways.

First, it must be recognized that a commitment pursuant to § 971.17(1) is for "custody, care *and treatment*" (emphasis added). Thus, a person subjected to involuntary commitment[2] has been afforded a

---

**2.** Noncriminal commitments under Chapter 51, Wis.Stats., are under the same terms. § 51.-22(1). Therefore, the issues presented in this case do not rise or fall on the fact that plaintiff is a criminal commitment. With respect to be-

ing subjected to nonconsensual drug treatments, he is in the same position as a Chapter 51 patient. In other words, the reason for his commitment is irrelevant.

hearing concerning whether or not he can be forced to undergo psychiatric treatment. In light of the statute under attack in this action, involuntary treatment by antipsychotic drugs must be considered to be within the contemplation of the committing court. It seems clear under § 51.59 that an involuntary commitment is a finding of incompetency with respect to treatment decisions. Nonconsensual treatment is what involuntary commitment is all about. It is for this reason that the Court in *Vitek v. Jones,* 445 U.S. 480, 494, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980), required a due process hearing before a prison inmate could be transferred to a mental institution.

Second, the statutory scheme of § 51.61 as a whole provides all of the process that is due. As defendants point out, it is important to note that *Rennie v. Klein, supra,* was a decision necessitated by a remand for consideration in light of *Youngberg v. Romeo. Rennie v. Klein,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982), reversing 653 F.2d 836 (3rd Cir. 1981). While *Youngberg* was, as plaintiff points out, distinguishable on its facts because it concerned the right to habilitation of a mentally retarded subject, *Rennie* is not distinguishable in that it raises precisely the issue advanced in this case: the right to refuse antipsychotic drugs. Thus, whatever rights plaintiff has to refuse antipsychotic drugs are measured by whether the decision to administer such drugs is a "substantial departure from accepted professional judgment, practice or standards." *Youngberg,* 457 U.S. at 323, 102 S.Ct. at 2462. *See also Rennie,* 720 F.2d at 269.

Accordingly, the statutory scheme must be examined to discover whether it reasonably insures that antipsychotic drugs are administered only in a professionally acceptable manner. First of all, the statutes provide that the drugs may be administered only on the prescription of a physician. § 51.61(1)(h). Second, a patient has a right to be free from unnecessary or excessive medication which clearly imposes the kind of professional standards contemplated by *Youngberg.* Finally, this right

can be enforced either through the grievance procedure provided under § 51.61(5) or, alternatively, by court action under § 51.61(7). Also enforceable under these provisions is the right to treatment which is "appropriate for his or her condition." § 51.61(1)(f). This would appear to also impose a requirement of professionally acceptable treatment which is all that *Youngberg* mandates.

Therefore, the plaintiff is not entitled to summary judgment in this action. Although the defendants have not moved for summary judgment, the foregoing shows that they, not the plaintiff, are entitled to summary judgment as a matter of law because there are no issues of material fact. *Spitz v. U.S.,* 432 F.Supp. 148 (E.D. Wis.1977).

The preceding statements dispose of this matter in its entirety. However, the Court believes that it is appropriate to dispose of some other issues raised by the filings of the parties. First, it is clear, by virtue of plaintiff's concession that the defendants were acting in good faith reliance on the statutes, and the absence of a clearcut decision holding such procedures unconstitutional, that there could be no successful claim for damages against these defendants. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Second, defendants have asserted (explicitly in their trial brief and less clearly in the brief in opposition to summary judgment) that factual issues exist as to whether the positive effects of plaintiff's medication outweigh the danger of side effects (and whether plaintiff in fact suffers from side effects), and whether plaintiff constitutes a danger to himself or others. The first of these would appear to be immaterial to this litigation because an exercise of professional judgment, which is presumably correct, would ordinarily weigh the pros and cons of such treatment. *Youngberg,* 457 U.S. at 322–23, 102 S.Ct. at 2461–62. The second, plaintiff's dangerousness has been preclusively determined by his commitment. To the extent that either of

**132**

these issues can be called disputed, the decision in *Youngberg* dictates that deference must be shown to professional judgment, *id.*, especially where, as here, the statutes require such exercise and provide for review of the treatment.

Accordingly,

### ORDER

IT IS ORDERED that plaintiffs motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that judgment shall be entered in favor of the defendants, with prejudice and costs, as there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law.