James E. WILLIAMS, Plaintiff–
Appellant,

v.

Nancy ANDERSON and S.D.
Parwatikar, Defendants–
Appellees.

No. 90–2487.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1991.

Decided April 9, 1992.

Stephen C. Mudge, Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, Edwardsville, Ill., Curtis L. Blood, argued, Collinsville, Ill., for James E. Williams.

Karen Michels Caille, Asst. Atty. Gen., Alison E. O'Hara, argued, Office of the Attorney General, Civil Appeals Div., Chicago, Ill., for Nancy Anderson and S.D. Parwatikar.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

While in custody at the Menard Correctional Center in Illinois, James Williams was given an injection of Haldol, an antipsychotic drug, against his will.[1] Mr. Williams brought suit under 42 U.S.C. § 1983 against Dr. S.D. Parwatikar, the staff psychiatrist who prescribed the drug, and Nancy Anderson, the staff nurse who

---

1. "Antipsychotic drugs, sometimes called 'neuroleptics' or 'psychotropic drugs,' are medications commonly used in treating mental disorders such as schizophrenia." *Washington v. Harper,* 494 U.S. 210, 214, 110 S.Ct. 1028, 1032, 108 L.Ed.2d 178 (1990).

administered it, for alleged violations of his rights under the Eighth and Fourteenth Amendments. The district court granted the defendants' motion for summary judgment. For the following reasons, we affirm in part and vacate and remand in part.

## I

## BACKGROUND

### A. *Facts*

James Williams was placed in the psychiatric unit at Menard Correctional Center on August 5, 1985. On August 7, Mr. Williams was examined by Dr. S.D. Parwatikar, a staff psychiatrist. In his post-examination order, Dr. Parwatikar prescribed an intra-muscular administration of ten milligrams (10 mg) of Haldol to Mr. Williams, "PRN if Pt gets violent."[2] In the affidavits submitted in connection with the defendants' motion for summary judgment, Dr. Parwatikar asserts that he wrote this order "with due consideration of plaintiff's mental condition and history of violent behavior," "as a means of treating violent outbursts." R.61, R.39.

On the morning of August 12, two correctional officers came to Mr. Williams' cell to take him to the shower. What happened next is in dispute. As noted below, in reviewing the district court's grant of summary judgment, we view the facts in the light most favorable to the non-moving party. Accordingly, the following version is drawn, unless otherwise noted, from Mr. Williams' description of the events in his deposition. R.61 at 6–8. We acknowledge that the defendants dispute several of Mr. Williams' allegations.

Mr. Williams was standing in his cell, dressed in pants and a shirt, when the officers arrived and told him they were to escort him to the shower. The officers asked Mr. Williams, "What are you doing dressed?" The officers told Mr. Williams that he should remove all of his clothes except his underwear. Mr. Williams responded that nobody told him he would be escorted to a shower or that he was sup-

posed to be ready and waiting in his underwear. One officer then said to the other, "He does not want a shower." The officers then left. As they walked away, Mr. Williams called to them to come back, saying in a defensive manner, "I didn't tell you I didn't want a shower. Why did you lie like that?" One officer returned and said, "Well, okay, go ahead and get ready for shower. We will come back and get you." A few minutes later, both officers returned. One officer said to Mr. Williams, "You think you're tough, don't you?" Mr. Williams responded, "I don't think I am tough." The officer then said, "I am going to see how tough you are when I let you out." Mr. Williams responded, "Man, well, man, I fought bigger people than you." The officer opened the cell and Mr. Williams stepped out. Holding handcuffs in his hands, the officer shoved Mr. Williams against the wall. Mr. Williams grabbed the handcuffs and pulled them away from the officer. The officer pushed Mr. Williams back into his cell and shut the door. Mr. Williams asked the officer to bring his supervisor and said, "I am not giving you these cuffs until he comes." The officers left and returned with a corrections sergeant, who simply said, "Give me the handcuffs." Mr. Williams gave the handcuffs to the sergeant, who then walked away with the two officers.

All parties agree that the two officers reported to Nurse Anderson that Mr. Williams had become violent. According to Nurse Anderson, the officers told her that Mr. Williams had attacked one of them. Nurse Anderson returned with the officers to Mr. Williams' cell and told Mr. Williams, "I am going to give you a shot." Mr. Williams resisted and told Nurse Anderson, "I can't take those shots ... I am allergic to Thorazine." Mr. Williams said this not knowing what type of drug Nurse Anderson intended to give him, but remembering that he had had a severe allergic reaction to forced injections of Thorazine when he was previously in custody. One of the officers told Mr. Williams that if he did not stick his arm out of the cell, "we

---

**2.** R.23 Ex.A. "PRN" is an abbreviation for *pro re nata,* a Latin phrase which means "as needed."

are coming in there." While Mr. Williams was leaning against the bars, one of the officers reached through the bars, grabbed Mr. Williams' hand, and pulled his arm through the bars. Mr. Williams struggled momentarily to free his arm, but when he saw Nurse Anderson ready with the shot, he submitted. In her notes on the event, Nurse Anderson wrote that she administered the drug "with force." R.23 Ex. A. Mr. Williams had an allergic reaction to the injection, including tachycardia and loss of control of his neck muscles.

## B. District Court Proceedings

On September 20, 1988, Mr. Williams filed suit against Nurse Anderson and Dr. Parwatikar, under 42 U.S.C. § 1983, for alleged violations of his rights under the Eighth and Fourteenth Amendments. The parties consented to trial by a Magistrate Judge. After discovery, both sides moved for summary judgment. On June 16, 1989, and March 30, 1990, the court held hearings on the cross-motions for summary judgment. On May 31, 1990, the court granted the defendants' motion for summary judgment. R.68, R.69. On June 29, 1990, Mr. Williams filed a timely notice of appeal.

## II

## ANALYSIS

In the "Request For Relief" section of his pro se complaint, Mr. Williams asked the district court to

[d]eclare that the acts and omissions of the defendants violate plaintiffs' [sic] rights, privileges and immunities secured by the United States Constitution Eighth and Fourteenth Amendments; Award compensatory damages to the plaintiff in the amount of $100,000.00 and punitive damages in the amount of $25,000.00; Order defendants to pay the costs of this

suit and reasonable attorney's fees to plaintiff; Grant such other relief as this court deems just and proper.

R.1 at 6. With respect to Mr. Williams' claim for damages, Nurse Anderson and Dr. Parwatikar raised the affirmative defense of qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). They contend that their actions did not violate any constitutional right that was "clearly established" at the time of the incident.[3] Although the district court ruled in favor of the defendants for different reasons, we find that this "threshold immunity question" is dispositive of the damages claim and limit our review of this claim to this question. *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). We then address the rest of Mr. Williams' requested relief.

## A. Applicable Standards

■ We review de novo a district court's grant of summary judgment. *Doe v. Allied–Signal, Inc.,* 925 F.2d 1007, 1008 (7th Cir.1991). Our task is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We " 'must view the record and all inference drawn from it in the light most favorable to the party opposing the motion.' " *Lohorn,* 913 F.2d at 331 (quoting *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989)).

---

**3.** Nurse Anderson and Dr. Parwatikar raise an alternative defense of Eleventh Amendment immunity. Because Mr. Williams sued Nurse Anderson and Dr. Parwatikar personally and is seeking damages from them personally, Mr. Williams' suit is against Nurse Anderson and Dr. Parwatikar in their individual capacities rather than in their official capacities and Eleventh Amendment immunity is therefore unavailable. *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Walker v. Rowe,* 791 F.2d 507, 508 (7th Cir.), *cert. denied,* 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986).

■ The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Knowledge of a general right is not sufficient to invoke liability; "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). This test "focuses on the state of the law at the time of the alleged violation." *Zook v. Brown,* 748 F.2d 1161, 1164 (7th Cir.1984).

### B. *Request for Damages*

■ The incident that gave rise to this lawsuit occurred in August 1985. Thus, in assessing the qualified immunity claims, our concern is whether statutes or caselaw existed in August 1985 to establish clearly that a state prisoner held in a psychiatric unit had a right under the Eighth or Fourteenth Amendment against forced administration of an antipsychotic drug without procedural review of the prescription or personal observation by a medical professional of the immediate need for the drug.

We begin with the relevant Supreme Court caselaw in 1985. In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court set forth the standard for analyzing prison medical treatment under the Eighth Amendment's proscription of cruel and unusual punishment. The Court held that "deliberate indifference to a prisoner's serious illness or injury," as well as "the unnecessary and wanton infliction of pain" violates the Eighth Amendment. *Id.* at 104–05, 97 S.Ct. at 291. The Court also made clear that medical malpractice, such as a physician's failure to order a diagnostic test, does not offend the Eighth Amendment. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

mistreatment under the Eighth Amendment." *Id.* at 106, 97 S.Ct. at 292.

With respect to a prisoner's rights to due process, in *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Court addressed the issue of whether a prisoner had a right to refuse transfer to a state mental hospital and to have procedural protections of that right. The Court concluded that a prisoner does indeed have such rights under the Due Process Clause.

> A criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections.

*Id.* at 493–94, 100 S.Ct. at 1264. The Court further held that the required due process protections include notice, a hearing, the opportunity to present and cross-examine witnesses, and to have an independent decisionmaker. *Id.* at 494–96, 100 S.Ct. at 1264–65. But in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court held that, although a developmentally disabled person who is committed involuntarily to a state hospital retains constitutionally protected liberty interests, the procedural protections of those interests are satisfied by the professional judgment of a mental health professional. Specifically, the Court held that a mental health professional's decision to place such a person under restraint is "presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. at 2462. Neither *Vitek* nor *Youngberg* addressed the precise issue of whether an inmate has a right to refuse antipsychotic drugs. By analogy, *Vitek* seemed to call for extensive procedural preconditions, but *Youngberg* appeared to grant presumptive validity to professional judgment.

The decisions of the United States Courts of Appeals also failed to establish clearly that the forcible administration of antipsychotic drugs to a mentally ill prisoner violated either the Eighth or Fourteenth Amendment. In *Bee v. Greaves*, 744 F.2d 1387 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985), the Tenth Circuit held that a pretrial detainee has a constitutionally-derived liberty interest in avoiding unwanted medication with antipsychotic drugs, but that this interest must be balanced against state interests in maintaining security and "prevent[ing] a violent and dangerous mentally ill prisoner from injuring himself and others." *Id.* at 1394. The Tenth Circuit further held that, while forcible medication with antipsychotic drugs may be required in an emergency, the decision that an emergency exists "must be the product of professional judgment by appropriate medical authorities, applying acceptable medical standards." *Id.* at 1395–96. Similarly, in *Rennie v. Klein*, 720 F.2d 266, 269 (3d Cir.1983) (en banc) a three-judge plurality of the Third Circuit wrote that "antipsychotic drugs may be constitutionally administered to an involuntarily committed mentally ill patient whenever, in the exercise of professional judgment, such an action is deemed necessary to protect the patient from endangering himself or others." *See also id.* at 274 (Seitz, C.J., concurring). And in *Lojuk v. Quandt*, 706 F.2d 1456 (7th Cir.1983), this court addressed the due process requirements of administering electro-convulsive therapy to patients who were voluntarily committed to a Veterans Administration psychiatric facility but had become incompetent to make treatment decisions. While this court declined to define precisely the scope of the liberty interest or the minimum procedures required by the Fifth Amendment's Due Process Clause, the court did hold that, "under even the most lenient reading of the Due Process Clause," the decision to administer electro-convulsive therapy must comport with accepted professional practice. *Id.* at 1467–68.

While these decisions of the United States Courts of Appeals share a least com-

mon denominator—that the decision to medicate an inmate or psychiatric patient against his will must meet professional standards of judgment—the decisions of the United States District Courts did not even, unanimously agree upon this procedural minimum. In *Stensvad v. Reivitz*, 601 F.Supp. 128 (W.D.Wis.1985), a district court upheld a Wisconsin statute under which involuntarily committed mental patients had no right to refuse medication and treatment. The plaintiff, who had been committed to a Wisconsin state mental health facility after a jury verdict of not guilty of first degree murder by reason of mental disease or defect, challenged the state law under the Due Process Clause of the Fourteenth Amendment. The district court ruled that, because the statute required the drug to be prescribed by a physician, and because that decision was appealable via a grievance procedure which protected an inmate's right to treatment that "is appropriate for his or her condition," the statutory scheme taken as a whole was constitutional under the Supreme Court's *Youngberg* guidance. *Stensvad*, 601 F.Supp. at 131.

In *Gilliam v. Martin*, 589 F.Supp. 680 (W.D. Okla.1984), a district court upheld the forced administration of antipsychotic medication to an inmate who had a history of violent, abusive, and destructive behavior whenever he was not under the effects of the medication. The court ruled that any due process rights the inmate had to be free from forcible administration of the drug were adequately protected by the use of trial periods of withdrawal of the medication, which had resulted in repeated regression to a dangerous psychotic condition, and by the use of various tests and examinations over a period of more than nine years. *Id.* at 682.

In *Davis v. Hubbard*, 506 F.Supp. 915 (N.D.Ohio 1980), a district court struck down a state mental hospital's practice of freely administering antipsychotic drugs to patients against their will. At the hospital, antipsychotic drugs were prescribed by both licensed and unlicensed physicians for patients they had never seen. The pre-

scriptions were at times to be given PRN, and attendants—without review by the prescribing physician—were allowed to request that a patient be medicated pursuant to such a prescription. *Id.* at 926–27. The court ruled that, in non-emergency situations, the hospital must provide the patient "some kind of hearing before compelling the patient to take psychotropic drugs." *Id.* at 938–39. This hearing must be held before an impartial decisionmaker and the patient must be allowed to present his views. *Id.* The court ruled, however, that when the hospital has reasonable cause to believe that a patient is *"presently* violent or self-destructive, and in such condition presents a present danger to himself, other patients or the institution's staff," the hospital could forcibly administer antipsychotic drugs. *Id.* at 935 (emphasis in original).

In *Sconiers v. Jarvis,* 458 F.Supp. 37 (D.Kan.1978), a district court upheld against a First Amendment challenge to the forced administration of antipsychotic drugs to an inmate who had an extensive history of hostile and destructive behavior and had been diagnosed with paranoid schizophrenia. Noting that prison officials have the responsibility to provide proper care for ill inmates as well as the responsibility to protect neighboring inmates, the court concluded that "the forced administration by prison physicians of tranquilizing drugs to an inmate with a medical history such as plaintiff's is not a violation of federal rights." *Id.* at 40.

In *Nelson v. Heyne,* 355 F.Supp. 451 (N.D.Ind.1972), *aff'd,* 491 F.2d 352 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974), a district court struck down a standing order by a physician at a reform school which allowed the custodial staff of the school to ask the staff nurse to administer forcibly antipsychotic drugs to residents who became overexcited. The standing order covered all the residents; the physician had not examined or diagnosed any individual resident nor prescribed the drug for a limited number of individuals. The court ruled that because this practice was not part of an on-going psychotherapeutic program, it violated the residents' Eighth and Fourteenth Amendment rights. *Id.* at 455.

In *Peek v. Ciccone,* 288 F.Supp. 329 (W.D.Mo.1968), a district court upheld the one-time forced administration of an antipsychotic drug to an inmate who had a medical history of chronic schizophrenia. The medication was prescribed by a physician for regular administration, and the inmate had regularly taken the drug voluntarily. The physician testified that the drug treatment had improved the inmate's condition. The court concluded that a one-time forced administration of the drug was not punishment or harm and did not violate the inmate's constitutional rights.

These district court opinions fail to delineate clearly the right of an inmate or psychiatric patient to refuse antipsychotic drugs, beyond the right to have a physician's examination and to have the medication prescribed as treatment rather than given as punishment. In sum, at the time the defendants acted, it was not clearly established that their actions violated the Due Process Clause of the Fourteenth Amendment. Nor was it established that their actions amounted to the sort of "deliberate indifference" or "unnecessary and wanton infliction of pain" independently proscribed by the Eighth Amendment. Thus, we hold that Nurse Anderson and Dr. Parwatikar are shielded from Mr. Williams' claim for damages by the doctrine of qualified immunity; neither Nurse Anderson nor Dr. Parwatikar violated any constitutional right that was clearly established at the time of the incident.

Recently, the Supreme Court clarified the rights of inmates to refuse antipsychotic drugs. In *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), the Court made clear that an inmate "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment," *id.* at 221–22, 110 S.Ct. at 1036, and that certain "procedural protections are necessary to ensure that the decision to medicate an inmate against his will is neither arbitrary nor erroneous." *Id.* at 228,

110 S.Ct. at 1040. In deciding whether the defendants are entitled to qualified immunity, we need not determine whether the procedures which Nurse Anderson and Dr. Parwatikar undertook prior to administering Haldol to Mr. Williams would violate rights that are clearly established after *Washington*.

## C. *Request for Injunctive Relief*

■ Reading the plaintiff's complaint charitably, as we must under the circumstances,[4] we proceed on the assumption that Mr. Williams also requested injunctive relief. At oral argument, the parties notified the court that circumstances have changed significantly since the termination of the proceedings in the district court. Apparently, Mr. Williams is no longer in the psychiatric center at Menard, and Dr. Parwatikar's prescription is no longer in force. It is not clear, however, that these changes are sufficient to moot the request for injunctive relief. In *Washington*, the Supreme Court held that an inmate's claim with respect to the administration of antipsychotic drugs did not become moot when he remained in the prison system and had a medical history that produced a strong likelihood of his return to the prison psychiatric center for further treatment. 494 U.S. at 218–19, 110 S.Ct. at 1035. The record in this case is not as well-developed as that before the Justices in *Washington*, and we cannot determine definitively whether the administration of antipsychotic drugs to this inmate by these defendants is capable of repetition yet evading review. *See Honig v. Doe*, 484 U.S. 305, 317–23, 108 S.Ct. 592, 601–04, 98 L.Ed.2d 686 (1988); *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam). As the Supreme Court pointed out in *Washington*, this assessment is fact-intensive. 494 U.S. at 218–19, 110 S.Ct. at 1035. Therefore, it is best left to the district court.

4. Federal courts have a duty to interpret charitably pleadings filed by pro se litigants, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Caldwell v. Miller*, 790 F.2d 589, 595 (7th Cir.1986), especially when dealing with "the workproduct of an individual with a

Conclusion

For the foregoing reasons, the district court's judgment is affirmed in part and vacated and remanded in part. The parties shall bear their own costs in this court.

AFFIRMED in part, VACATED and REMANDED in part.

history of mental health problems," *Spencer v. Lee*, 864 F.2d 1376, 1385 (7th Cir.1989) (en banc) (Ripple, J., and Flaum, J., concurring in part and dissenting in part), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).