48 F.3d 1221
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Ernest L. LEVINE, Plaintiff-Appellant,
v.
UNITED STATES of America, et al., Defendants-Appellees.
 No. 93-3183.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 6, 1995.*
Decided March 9, 1995.
 
 Before CUMMINGS, PELL, and MANION, Circuit Judges.
 
 ORDER
 
 1
 Ernest Levine challenges the decisions of the Government Services Administration, Small Business Administration, and Department of Labor that Levine is not a "regular dealer" within the meaning of 48 C.F.R. Secs. 22.601, 22.606-2 and 41 C.F.R. Sec. 50-206.53(a), and is thus ineligible to sell Select Comfort brand mattresses to federal agencies. After exhausting his administrative remedies, Levine filed a complaint in district court seeking damages and injunctive relief alleging that (1) the definition of a "regular dealer" is unreasonable because it discourages the sale of novel products to the government, and (2) the agencies' decisions are arbitrary and capricious because Levine was a regular dealer. The district court rejected Levine's claim and granted summary judgment for the government.
 
 
 2
 On appeal, Levine argues the district court erred as a matter of law. We review the district court's grant of summary judgment de novo. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Williams v. Anderson, 959 F.2d 1411, 1413 (7th Cir.1992). Because Levine is proceeding pro se on appeal, we will read his arguments liberally. Bagola v. Kindt, 39 F.3d 779, 780-81 (7th Cir.1994). In addition to the claims raised before the district court, Levine now raises several constitutional claims. We consider this claim waived on appeal. See Browning-Ferris Indus. v. Kelco Disposal Inc., 492 U.S. 257, 276, 109 S.Ct. 2909, 2921 (1989) (due process claim waived when not raised before lower court); Walden v. Illinois Cent. Gulf R.R., 975 F.2d 361, 366 (7th Cir.1992) (same); In re Edwards, 962 F.2d 641 (7th Cir.1992) (same).
 
 
 3
 After reviewing the record, we AFFIRM for the reasons stated in the attached district court Memorandum Opinion and Order dated July 19, 1993.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 4
 Ernest L. Levine, Plaintiff,
 
 
 5
 v.
 
 
 6
 United States of America, et al., Defendants.
 
 91 C 2789
 DOCKETED July 20, 1993
 MEMORANDUM OPINION AND ORDER
 
 7
 MAROVICH, District Judge.
 
 
 8
 Plaintiff, Ernest Levine ("Levine"), applied to the federal government to be the government's provider of air-inflated mattresses. However, after reviewing his application, the General Services Administration ("GSA") determined that Levine did not qualify as a "regular dealer" as required by the Walsh-Healey Act. Therefore, GSA denied Levine's application. GSA's denial was upheld on review by both the Small Business Administration ("SBA") and the Department of Labor ("DOL"). Consequently, Levine filed suit against defendants, the United States of America, GSA, and two GSA employees, Richard Austin and Paulette Sepulvado (collectively "defendants"), seeking judicial review of the administrative determination. Defendants now move for summary judgment pursuant to Federal Rule of Procedure 56. For the following reasons, we grant defendants' motion for summary judgment.
 
 BACKGROUND
 
 9
 Levine operates a sole proprietorship engaged in the selling of products. Beginning around January 2, 1990, Levine entered into an agreement with Select Comfort Mattresses ("Select Comfort") to sell their mattresses. This agreement provided that Levine would be the exclusive seller of Select Comfort products to the federal government.
 
 
 10
 Levine did not maintain an inventory of mattresses or a permanent space to keep any potential inventory. His practice was to solicit orders for Select Comfort and transmit them to the factory. The factory would ship the mattress directly to the customer who, in turn, would remit payment directly to Select Comfort.
 
 
 11
 On June 19, 1990, Levine submitted an application to GSA seeking to have Select Comfort mattresses included in the New Item Introductory Schedule ("NIIS") for sale to government agencies. On April 19, 1991, after evaluating the solicitation and other information provided by Levine, GSA issued its determination that Levine did not qualify as a "regular dealer" of mattresses within the meaning of the Walsh-Healey Act, 41 U.S.C. Secs. 35-45. The reasons stated for the rejection were (1) that Levine's firm does not buy products, (2) that the firm does not have space wherein stock was maintained on other than a demand basis, (3) that the firm does not maintain a true inventory of stock from which sales were made, and (4) that the firm does not sell to purchasers other than federal, state, or local governments.
 
 
 12
 On May 8, 1991, Levine filed a protest with GSA and also filed the instant lawsuit. On May 15, GSA denied the protest because Levine failed to present additional evidence in support of his position. GSA forwarded Levine's matter to the SBA for their determination of his status under Walsh-Healey as required by the regulations.
 
 
 13
 On May 21, 1991, the SBA sent Levine a letter requesting that he present necessary evidence to support his claim that he is a "regular dealer" so that the SBA could make its independent determination of Levine's eligibility. Levine did not provide any additional information that would assist the SBA with its determination. On May 31, 1991, the SBA denied Levine's request for a Walsh-Healey certification and referred the matter to the DOL. After evaluating the evidence, the DOL also denied Levine's request.
 
 
 14
 Levine stopped selling Select Comfort mattresses as of the filing of this lawsuit. Of the 579 Select Comfort mattresses sold by Levine between June 1990 and May 8, 1991, 577 were sold to the United States Air Force. Levine sold two mattresses to members of the general public: one to his nephew, and the other to a furniture store.
 
 
 15
 Levine claims that he was wrongly denied the right to sell his product to the government by GSA's refusal to grant him a Walsh-Healey certification. In his complaint, Levine claims that he qualifies as a "regular dealer" under the Walsh-Healey Act or, in the alternative, that the pertinent regulations are unreasonable and exceed the authority granted to GSA by Congress.
 
 ANALYSIS
 
 16
 A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In viewing a motion for summary judgment, we must view the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion. Smith v. General Scanning, Inc., 876 F.2d 1315, 1318 (7th Cir.1989).
 
 
 17
 Where the defendant moves for summary judgment, the plaintiff must provide sworn testimony that raises a genuine issue of material fact supporting each element of his or her case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate where the plaintiff relies only upon speculation and conclusory allegations to support his case. Visser v. Packer Eng'g Assoc, Inc., 924 F.2d 655, 659 (7th Cir.1991).
 
 
 18
 A. LEVINE DOES NOT QUALIFY AS A "REGULAR DEALER"
 
 
 19
 Levine challenges GSA's determination that his business practices regarding Select Comfort mattresses do not qualify him as a "regular dealer" in mattresses as that term is defined in the regulations promulgated under the Walsh-Healey Act.
 
 
 20
 The Walsh-Healey Act is an instruction by the government to its agents concerning the terms and conditions under which the government will permit goods to be sold. Perkins v. Lukens Steel Co., 310 U.S. 113, 127 (1940). The portion of the Act relevant to this litigation provides that in any contract entered into by an agency of the United States government for furnishing of materials, supplies, articles, and equipment exceeding $10,000, the contractor must be a regular dealer of the materials, supplies, articles, or equipment to be supplied by performance of the contract. 41 U.S.C. Sec. 35(a).
 
 
 21
 The Act itself does not define the term "regular dealer." Instead, the definition of that term is left to the Secretary of Labor, who, by statute, is charged with implementing the Act. See 41 U.S.C. Sec. 38. The regulations generally define "regular dealer" as:
 
 
 22
 a person who owns, operates, or maintains a store, warehouse, or other establishment in which the materials, supplies, articles, or equipment of the general character described by the specifications and required under the contract are bought, kept in stock, and sold to the public in the usual course of business.
 
 
 23
 41 C.F.R. Sec. 50-206.53.
 
 
 24
 The regulations further establish six criteria which must be met in order for a particular contractor to qualify as a "regular dealer" under the Act.
 
 
 25
 (1) The bidder must have an establishment or leased or assigned space in which it regularly maintains a stock of goods in which it claims to be a dealer;
 
 
 26
 (2) The stock maintained must be a true inventory from which sales are made; the requirement is not satisfied by a stock of sample or display goods;
 
 
 27
 (3) The goods stocked must be of the same general character as the goods to be supplied under the contract;
 
 
 28
 (4) Sales must be made regularly from stock on a recurring basis;
 
 
 29
 (5) Sales must be made regularly in the usual course of business to the public, i.e. to purchasers other than Federal, State, or Local Government agencies; this requirement is not satisfied if the contractor merely seeks to sell to the public but has not yet made such sales; and
 
 
 30
 (6) The business must be an established and ongoing concern.
 
 
 31
 41 C.F.R. Sec. 50-206.53(b).
 
 
 32
 Agency actions in implementing their own regulations must be reviewed under the arbitrary and capricious standard. Central States Enter. Inc. v. Interstate Commerce Comm'n, 780 F.2d 664, 673 (7th Cir.1985). Our review of an agency's decision under this standard is narrow and a court is not to substitute its own judgment for that of the agency. Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983). The primary requirement of the arbitrary and capricious standard of review is the simple but fundamental rule of law that an agency must set forth clearly the grounds on which it acted. Illinois v. U.S., 666 F.2d 1066, 1073 (7th Cir.1981). Normally, an agency rule would be arbitrary and capricious if the agency relied on factors which Congress did not intend it to consider, if it entirely failed to consider an important aspect of the problem, if it offered an explanation for its decision that runs counter to the evidence before the agency, or if the agency's explanation is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Motor Vehicle Mfrs., 463 U.S. at 43. In this case, GSA, SBA, and DOL clearly set forth the grounds on which they acted. Their decisions not to grant Levine "regular dealer" status are supported by the evidence and by Levine's own admissions.
 
 
 33
 In determining whether Levine qualified as a "regular dealer," GSA followed the governing regulations. GSA cited two reasons supporting its determination that Levine did not qualify for certification as a "regular dealer." First, Levine did not have stock of the materials to be sold under the contract, and second, he did not make sales to customers other than government agencies.
 
 
 34
 GSA found that Levine did not maintain warehouse space or a stock of goods from which sales were made. In fact, Levine admitted in his deposition that he maintained no stock or inventory of mattresses. Levine's failure to maintain an inventory is sufficient in and of itself to preclude him from a Walsh-Healey certification as a "regular dealer," since four of the six criteria set forth in the regulations require that some kind of inventory be maintained by the bidder. However, GSA also offered an additional reason for denying Levine's application. GSA determined that Levine did not make sales in the usual course of business to the general public, as is required under the regulations. During the period of Levine's association with Select Comfort, Levine sold a total of 579 mattresses. One mattress was sold to a furniture store, and another to his nephew. The remaining 577 mattresses were all sold to a government agency. Clearly, Levine does not sell regularly to the general public, and is therefore unable to satisfy still another of the criteria for certification.
 
 
 35
 Since Levine failed to meet the requirements for "regular dealer" status, GSA properly denied certification to Levine.[1] Therefore, we conclude that GSA's denial of certification was not an arbitrary and capricious action pursuant to the court's applicable standard of review.
 
 
 36
 B. GSA REGULATIONS ARE CORRECT AND REASONABLE
 
 
 37
 In his complaint, Levine also alleges that the regulations defining the term "regular dealer" are unreasonable and outside the authority granted to the Secretary by Congress.
 
 
 38
 When an executive agency has statutory authority to issue regulations, the regulations promulgated are entitled to a presumption of validity and will not be overturned unless patently arbitrary and capricious or plainly inconsistent with the underlying purpose of the legislation. United Mine Workers v. Kleppe, 561 F.2d 1258, 1263 (7th Cir.1977). The person challenging such a regulation has a heavy burden to meet in demonstrating the invalidity of the regulation. Id. We believe that Levine has failed to satisfy this exacting burden.
 
 
 39
 Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases. Perkins, 310 U.S. at 127. Acting through its agents, the Government may lay down guide posts by which its agents are to proceed in the procurement of supplies. Id.
 
 
 40
 The Walsh-Healey Act was enacted to provide conditions for the purchase of supplies and the making of contracts by the United States. Its purpose is "to obviate the possibility that any part of our tremendous national expenditures would go to forces tending to depress wages and purchasing power and offending fair social standards of employment." 41 C.F.R. Sec. 50-206.1. Although the Walsh-Healey Act does not itself define the term "regular dealer," the Act delegates authority to the Secretary of Labor to prescribe rules and regulations necessary to the administration of the Act. 41 U.S.C. Sec. 38.
 
 
 41
 Levine argues that while the regulations implementing the Walsh-Healey Act may be reasonable and correct in many instances, they are incomplete and, therefore, incorrect and unreasonable when applied to dealers and representatives of new manufacturers. Levine contends that GSA's rigid adherence to the regulations discourages innovation and initiative and is inadequate in the context of a new item that is available only through a single source.
 
 
 42
 It is not necessary for the court to determine whether plaintiff's policy-based arguments have merit. As stated above, the court is bound to uphold the regulations unless they are found to be patently arbitrary and capricious or plainly inconsistent with the underlying purpose of the legislation. Kleppe, 561 F.2d at 1263.
 
 
 43
 We find the regulations defining "regular dealer" to be consistent with the underlying purpose of the legislation. In fact, they have been held to be both correct and reasonable. See, e.g., United States v. Davison Fuel and Dock Co., 371 F.2d 705, 711-14 (4th Cir.1967). The policies embodied in the regulations defining "regular dealer" protect not only the employees of the contracting companies, but also the competitive interest of all firms qualified to compete for government contracts. 41 C.F.R. Sec. 50-206.2(b).
 
 
 44
 Plaintiff solicits this court to enter the legislative realm and rewrite the process by which the government operates its procurement business. Perhaps if the regulations were rewritten today in light of modern practices, they might reflect certain of plaintiff's arguments. However, that is a result which must be obtained by the process of amending the regulations, and not by judicial interpretation. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 113 S.Ct. 1160, 1163 (1993). In the absence of such an amendment, we must rely on summary judgment to dispose of this claim.
 
 CONCLUSION
 
 45
 For the foregoing reasons, we grant defendants' motion for summary judgment.
 
 DATED: July 19, 1993
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Defendants readily admit that Levine would be eligible to sell mattresses to the government had he applied for the solicitation as an "agent" of Select Comfort. See 41 C.F.R. Sec. 50-206.55. Levine's practice was to solicit orders for mattresses from customers and to transmit those orders to the factory. Levine did not make delivery of the mattresses and was never paid by the customer. In effect, his business dealings were those of a sales agent for the factory. However, Levine clings to his contention that he qualifies as a regular dealer and inexplicably refuses to apply for a new solicitation as an agent of Select Comfort