Joseph D. LEEKS, Plaintiff–Appellee,

v.

Lowell K. CUNNINGHAM, Defendant–Appellant,

Mr. Carson; P. Bass; Joseph A. Kemper; M. Press, Defendants.

No. 92–2106.

United States Court of Appeals, Eleventh Circuit.

May 18, 1993.

Before FAY, Circuit Judge, JOHNSON, Senior Circuit Judge, and MERHIGE *, Senior District Judge.

PER CURIAM:

In this matter, a county jail physician appeals the district court's denial of his motion for summary judgment as to a prisoner's claim for damages under 42 U.S.C. § 1983 for allegedly unnecessarily and forcibly subjecting him to antipsychotic medication in violation of his constitutional rights. Finding that the district court erred in its refusal to find appellant qualifiedly immune under the instant facts, we reverse.

The facts pertinent to this matter are as follows. On June 1, 1989, Plaintiff-appellee Joseph Leeks was admitted as a pre-trial detainee to the Lake County Jail in Tavares, Lake County, Florida. Subsequent to being informed by appellee's mother that he was suicidal, jail officials placed appellee on suicide watch. Pursuant to a request by jail officials, on June 7, 1989, Defendant-appellant Dr. Lowell K. Cunningham examined appellee and, finding appellee non-suicidal, removed appellee from suicide watch. On June 28, 1989, the supervising nurse at the Lake County Jail informed appellant by telephone that appellee had become agitated, requiring officers to shackle him to gain control and prevent harm to himself. Based on that information, appellant authorized an intramuscular injection of 25 mg. of Thorazine, an antipsychotic medication. This injection occurred over appellee's objections.

Again, on July 1, 1989, the nurse phoned appellant to inform him of a similar instance of appellee's misbehavior, requiring officers to shackle appellee to prevent harm to himself and others. Once again, based on information provided to him, appellant authorized another injection of 25 mg. of Thorazine. Jail officials carried out this injection, once again over the objection of appellee. From July 5, 1989 to October 18, 1989 appellant also prescribed another antipsychotic, Mellaril, to be taken twice a day by mouth.

Russell W. LaPeer, Robert R. Wheeler, Pattillo & McKeever, PA, Ocala, FL, defendant-appellant.

Thomas G. Fallis, Jacksonville, FL, for plaintiff-appellee.

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

Appellee voluntarily consumed this drug pursuant to the prescription.

On October 19, 1990, appellee filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging that his rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated by the involuntary administration of the antipsychotic medications.

Appellant, on July 9, 1991, moved for summary judgment, asserting the affirmative defense of qualified immunity. On November 19, 1991, the district court denied appellant's motion for summary judgment.[1] The court reached its conclusion on the basis of a recent decision of the Tenth Circuit Court of Appeals. In *Bee v. Greaves*, 910 F.2d 686 (10th Cir.1990), the Court reviewed the trial court's denial of summary judgment on the basis of qualified immunity as to a jail psychiatrist who allegedly ordered that a pretrial detainee forcibly undergo the administration of an antipsychotic drug. The Tenth Circuit affirmed the denial of qualified immunity, finding that as of 1980 it was "unequivocal" that the law as to the forced medication of a pretrial detainee was clearly established. *Id.* at 688. In support, the Court stated as follows:

> The Supreme Court recently considered 'whether a judicial hearing is required before the state may treat a mentally ill prisoner with antipsychotic drugs against his will.' *Washington v. Harper*, [494] U.S. [210] 110 S.Ct. 1028, 1032, 108 L.Ed.2d 178 (1990). In describing the substantive right at stake, the Court stated that it had '*no doubt* that … respondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.' *Id.*, [494 U.S. at 221] 110 S.Ct. at 1036

(emphasis added). In support of this declaration, the Court cited its opinions in *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), and *Parham v. J.R.*, 442 U.S. 584, 600–01, 99 S.Ct. 2493, 2503–04, 61 L.Ed.2d 101 (1979), both of which predate Bee's involuntary medication. If those cases established the law beyond doubt with respect to a convicted prisoner, they indisputably did so with respect to a pretrial detainee as well. *See Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979)….

*Id.* (footnote omitted).

In sum, the district court in the instant case denied appellant's claim of qualified immunity on the basis of the Tenth Circuit's *Bee* opinion, decided thirteen months after appellant's actions here, and *Bee*'s interpretation of *Washington v. Harper, supra*, itself decided some seven months after the Thorazine injections at issue here. The question squarely before this Court is whether this outcome and rationale are proper.

■ Whether the district court properly denied appellant's motion for summary judgment on the basis of qualified immunity is a question of law we review *de novo. James v. Douglas*, 941 F.2d 1539, 1542 (11th Cir.1991); *Howell v. Evans*, 922 F.2d 712, 718–19 (11th Cir.1991).[2] In deciding whether the district court erred, our task, as was the trial court's, is to ascertain whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). We consider the record as it was presented to the district court and view it in the light most favorable to the non-

---

1. The district court did, however, grant appellant's motion for summary judgment as to appellee's claim that the appellant unnecessarily and wrongfully prescribed the drug Mellaril to be consumed orally, twice a day, from June 28, 1989 to October 1989. The court found no dispute in the record that appellee voluntarily consumed this medication and that the medicine was prescribed on the basis of appellee's statement that the antipsychotic was helpful; further, pursuant to appellee's statement that he did not need the medication, the prescription was dis-

continued. Accordingly, the court entered summary judgment in favor of appellant on this basis. The trial court's ruling as to this other contention is not before the Court and therefore will not be reexamined.

2. A district court's denial of qualified immunity is an appealable "final decision" within the meaning of 28 U.S.C. § 1291. *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir.1992).

movant, appellee. *Waldrop v. Evans*, 871 F.2d 1030, 1034–35 (11th Cir.1989)

■■■ The law attending qualified immunity is well-settled. Officials [3] enjoy immunity from civil damages for their discretionary acts so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In reaching this determination, the court must ensure that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). This analysis focuses on the state of the law at the time of the alleged violation. *Acoff v. Abston*, 762 F.2d 1543, 1549–50 (11th Cir.1985). Plaintiff bears the burden of showing that the official violated such clearly established law. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983) (per curiam). Thus, in assessing appellant's qualified immunity claim, our concern is whether statutory or case law existed in July 1989 to clearly establish that a county jail pretrial detainee had a right under the Due Process Clause to be free of unwanted administration of antipsychotic medication.[4]

■■■ To this end, we consider the law originating in this Circuit, as well as the Supreme Court, the courts of appeals, and the district courts. *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir.1990). As noted above, the Supreme Court in 1990 decided *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), wherein the Court held that "[t]he forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Id.* at 229, 110 S.Ct. at 1040. In *Harper*, a prison inmate alleged that the State of Washington and various individuals violated his due process rights by giving him Mellaril and other antipsychotic drugs against his will. Although the Court held that Harper had a protectible liberty interest, the Court nonetheless concluded that the State's policy as to administering unwanted antipsychotic medication comported with due process requirements as it was reasonably related to the State's legitimate interest in preventing harm to the inmate and others and was in the inmate's medical interest.

More recently, in *Riggins v. Nevada*, —— U.S. ——, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992), the Supreme Court considered whether the involuntary administration of the antipsychotic drug Mellaril during a criminal defendant's trial violated the defendant's rights under the Sixth and Fourteenth Amendments. Citing *Harper*, the Court concluded that such a practice was impermissible insofar as the State of Nevada failed to show the need for the application and its medical appropriateness.[5]

As a threshold matter, *Harper*, and the Court's revisiting of the question of forced administration of antipsychotic drugs in *Riggins v. Nevada*, are not controlling as both cases were decided well after the allegedly improper Thorazine injections involved in this appeal. *Acoff v. Abston*, 762 F.2d 1543,

3. A private physician such as appellant who is under contract to provide obligatory medical services to a county jail is considered to be acting under color of state law for § 1983 purposes. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Carswell v. Bay County*, 854 F.2d 454 (11th Cir.1988).

4. Appellee's amended complaint makes claims under the Eighth and Fourteenth Amendments to the United States Constitution. Because appellee is a pretrial detainee, the appropriate constitutional provision is the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Ancata v.*

*Prison Health Services, Inc.*, 769 F.2d 700, 703 n. 5 (11th Cir.1985).

5. Concurring, Justice Kennedy distinguished *Washington v. Harper*, wherein the "purpose of the involuntary medication was to insure that the incarcerated person ceased to be a physical danger to himself or others." *Riggins v. Nevada*, —— U.S. ——, ——, 112 S.Ct. 1810, 1818, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring). In *Riggins*, Justice Kennedy noted, the purpose of the medication was intended to render the defendant competent to stand trial, implicating a panoply of concerns ranging from the defendant's physical appearance to the jury to his capacity to provide assistance to counsel.

1549–50 (11th Cir.1985); *Zook v. Brown,* 748 F.2d 1161, 1164 (7th Cir.1984). Nor is the result in this appeal dictated by the result reached by the Tenth Circuit in *Bee v. Greaves. Generali v. D'Amico,* 766 F.2d 485, 489 (11th Cir.1985); *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. 1981). *See also Davis v. Holly,* 835 F.2d 1175, 1182 (6th Cir.1987) ("A single idiosyncratic opinion from the court of appeals for another circuit was hardly sufficient to put the defendants on notice of where this circuit or the Supreme Court would come out on the issue in question."). Of potential import in the *Bee* decision, however, is the court's view as to the applicability of Supreme Court case law, most notably *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), and *Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). In *Vitek,* the Court considered whether the State of Nebraska violated the due process rights of a convicted felon when it transferred him against his will to a mental hospital. Affirming the district court, the Court held that such a transfer implicated a liberty interest under the Fourteenth Amendment in that a state statute governing such transfers reasonably imparted an expectation to the prisoner that such a transfer would not take place absent an actual finding that he was suffering from a mental illness. Furthermore, because the statute did not require certain procedural protections, including notice and an adversary hearing, the transfer of the prisoner was constitutionally infirm.

In *Parham,* the Court considered the constitutionality of a procedure employed by the State of Georgia in the voluntary commitment of children under the age of eighteen to state mental hospitals. While acknowledging that children have a liberty interest in not being confined unnecessarily for medical treatment, the Court concluded that Georgia's practices satisfied minimum procedural due process requirements to ensure that such admission decisions were not in error and did so in a way that neither unduly burdened the State nor inhibited parental decisions to seek state help for their children.

We are not convinced that *Vitek* and *Parham* clearly enunciated that a pre-trial detainee such as appellee as of 1989 possessed a protectible liberty interest in not being subjected to involuntary antipsychotic medication. The *Harper* Court's reference to *Vitek* and *Parham,* cases involving wholly different facts than those in *Harper* and the instant case, in no way can be said to have preordained the result reached in *Harper,* much less render *Harper's* result "clearly established." "If the law at that time was not clearly established, an official should not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. *See also Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991) (qualified immunity provides officials the latitude to act "without having to anticipate, on the pain of civil liability, future refinements or clarifications of constitutional law"). In reaching determinations with regard to qualified immunity, the courts are to remain mindful that the doctrine is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). In sum, appellant could not reasonably have been expected to anticipate changes in the law, or assume that the Supreme Court or this Circuit would accept and endorse the Tenth Circuit's decision in *Bee v. Greaves.* Indeed, this tenuous chain of assumptions in itself bespeaks that the law was unclear at the time of appellant's action in 1989.

That the law was not clearly established in 1989 is supported by a review of the case law of other jurisdictions. For instance, in *Paul E. Sherman v. Four County Counseling Center, et al.,* 987 F.2d 397 (7th Cir.1993), the Seventh Circuit considered a § 1983 due process claim under facts similar to those presented here. In *Sherman,* plaintiff was arrested in March 1989, released, and later involuntarily detained pursuant to officials' belief that he was suffering from a psychiatric disorder and was dangerous to himself and others. Plaintiff was thereafter given treatment at a local psychiatric facility, including the involuntary administration of antipsychotic medication. The Seventh Circuit affirmed the district court's grant of qualified

immunity. According to the *Sherman* Court, until *Harper* a liberty interest did not exist under the circumstances, rendering defendants' actions in 1989 qualifiedly immune.

A similar result was reached in *Williams v. Anderson*, 959 F.2d 1411 (7th Cir.1992). In *Williams*, an inmate was forcibly given an injection of Haldol, an antipsychotic, and sued under 42 U.S.C. § 1983 for deprivation of his Eighth and Fourteenth Amendment rights. After an extensive review of the pertinent case law, the Court concluded that as of 1985 the case law failed to

> delineate clearly the right of an inmate or psychiatric patient to refuse antipsychotic drugs, beyond the right to have a physician's examination and to have the medication prescribed as treatment rather than as given as punishment. In sum, at the time the defendants acted, it was not clearly established that their actions violated the Due Process Clause of the Fourteenth Amendment.

*Id.* at 1416.

Finally, in *Felce v. Fiedler*, 974 F.2d 1484 (7th Cir.1992), state parole authorities conditioned an inmate's release upon his involuntary submission to antipsychotic drug therapy, and the inmate thereafter sued under 42 U.S.C. § 1983 for violation of his rights under the Due Process Clause. The Court rejected the inmate's contention that *Harper*, decided more than eight months before his parole conditions were drafted, clearly established that antipsychotic drugs cannot be forcibly administered to an inmate without affording that inmate certain procedural protections.

Still yet, even as of 1989 the courts having concluded that under certain circumstances the involuntary administration of antipsychotic drugs were violative of due process, did so with an "emergency exception." *See, e.g., United States v. Charters*, 829 F.2d 479, 484 (4th Cir.1987) ("[T]he present situation does not present an emergency situation in which violence or the imminent deterioration

of a patient will occur in the absence of forcible medication...."); *Rennie v. Klein*, 720 F.2d 266, 269 (3rd Cir.1983) ("antipsychotic drugs may be constitutionally administered to an involuntarily committed mentally ill patient whenever, in the exercise of professional judgment, such an action is deemed necessary to prevent the patient from endangering himself or others."); [6] *Davis v. Hubbard*, 506 F.Supp. 915, 935 (N.D.Ohio 1980) ("[T]he State must have at least probable cause to believe that the patient is *presently* violent or self-destructive, and in such condition presents a danger to himself, other patients or the institution's staff...."). Here, the staff in the Tavares Jail was confronted with extremely disruptive and self-destructive behavior on the part of appellee. Appellee described his behavior on June 28, 1989, the first instance of involuntary medication, as follows:

Q. How about flinging your arms around?

A. I had hit—hit a shower in the cell block with my fist.

Q. Had you been shaking your head left and right, back and forth, with your head out like—as I'm kind of doing right now (indicating)—with your head out forward, shaking your head back and forth to the left and right? Had you been doing that?

A. I had been shaking my head; whether it was forward or not, I don't remember.

Q. Okay. So anyway, that—it was flinging your body around and your arms around, shaking your head; that's what made these guys hold you down in the cell; isn't that true?

A. Yea. Because they thought I was going to hurt myself.

Under the circumstances, we conclude that appellant did not deprive appellee of a protectible liberty interest in 1989 as a result of authorizing the involuntary administration of Thorazine.

In sum, we conclude that the record is devoid of evidence sufficient to create a genuine issue of material fact as to whether appel-

---

**6.** *Rennie,* as the quotation reveals, concerned the medication of involuntary *civil* commitments. Significantly, the Third Circuit, in a case decided February 23, 1990, expressly acknowledged that the right enunciated in *Rennie* had not been

extended within the Third Circuit to "prison inmates." *White v. Napoleon,* 897 F.2d 103, 112 (3rd Cir.1990). In *White,* the Third Circuit extended the limited right of refusal enunciated in *Rennie* to convicted prisoners. *Id.* at 113.

lant violated a clearly established right of appellee as a result of the Thorazine injections in July 1989. Therefore, appellant is entitled to summary judgment based on the doctrine of qualified immunity. Accordingly, we reverse the district court's order and remand this case for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.