United States Court of Appeals,

Eleventh Circuit.

No. 95-6026.

Roy L. COFIELD, Rita F. Cofield, Plaintiffs-Appellants,

v.

RANDOLPH COUNTY COMMISSION, a governmental entity; Randolph County Sheriff's Department, a governmental entity, Defendants,

Ricky Hancock, an employee of the Randolph County Commission and/or Randolph County Sheriff's Department; Danny Belyeu Chevrolet, Inc.; Danny Belyeu, individually and in his capacity as President of Danny Belyeu Chevrolet; Scott Evans, an employee of Danny Belyeu Chevrolet, Inc., and/or Danny Belyeu; Fictitious Defendant(s), A, B, or C, Defendants-Appellees.

Aug. 6, 1996.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-93-D-612-F), Ira De Ment, Judge.

Before TJOFLAT, Chief Judge, BLACK, Circuit Judge and GOODWIN[*], Senior Circuit Judge.

TJOFLAT, Chief Judge:

I.

The controversy in this case stems from an automobile transaction between a Chevrolet dealership and husband and wife buyers. The buyers, Roy and Rita Cofield, were purchasing a new Chevrolet Blazer from Danny Belyeu Chevrolet. As part of the purchase price, the Cofields traded in to the dealership a car, a pick-up truck, and a camper trailer. The transaction collapsed when the camper turned out to be a 1978 model, rather than a 1987 model (which is how the camper was described in the paperwork on the sale)—and, thus, was of considerably less value than the

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

dealership expected.[1]

Employees of the dealership discovered the mistake the same day the deal was closed. Danny Belyeu, the owner of the dealership, decided to cancel the transaction by "repossessing" the Blazer and returning to the Cofields the consideration (the camper, automobile, and pick-up truck) they had given for it. Belyeu was, however, concerned that the Cofields might forcibly resist the repossession of the Blazer. He therefore instructed his employees to contact the local sheriff's office before proceeding with the repossession. They did so, and Deputy Sheriff Ricky Hancock accompanied two Belyeu employees, Scott Evans and John Bullock, to the Cofield residence.

Bullock's role was to take the Blazer back to the dealership; Hancock accompanied Evans to the front door of the Cofield house. The parties dispute whether the Blazer had left the premises before or after Deputy Hancock rang the Cofields's doorbell. There is no dispute, however, that the Cofields objected to the removal of the Blazer from their premises.

Following the dealership's repossession of the Blazer, the Cofields brought this action against the dealership, Danny Belyeu, Scott Evans, the Randolph County Commission, the Randolph County Sheriff's Department, and Deputy Hancock. Their complaint

---

[1]The Cofields claim that they did not represent the camper as a 1987 model. Nonetheless the transaction included, as part of the purchase price of the Blazer, the trade in of a 1987 camper. The Cofields do not dispute that the difference in value between the two models amounted to several thousand dollars. Whether the Cofields intentionally deceived the dealership is of no moment.

contained ten counts.[2]  Only a portion of count I, brought against

Deputy Hancock, is at issue in this appeal.  In that portion, the

Cofields sought money damages against Hancock in his individual

capacity under 42 U.S.C. § 1983, alleging violations of the Fourth

and Fourteenth Amendments to the United States Constitution.

Specifically, they alleged that Hancock effected a "seizure" of

their automobile in violation of the Fourth Amendment and deprived

them of "procedural due process" in violation of the Fourteenth

Amendment.[3]

Deputy Hancock's answer plead the defense of qualified

immunity with respect to the constitutional claims.  The district

court granted Hancock summary judgment on that ground and dismissed

count I.  Because this left no federal claims pending against any

defendant, the court dismissed without prejudice the Cofields'

pendent state law claims against Hancock and the other defendants.

The Cofields appeal the granting of summary judgment on the

---

[2]We refer to the Cofields' amended complaint as their
"complaint."  In count I, which pertained solely to Deputy
Hancock, they alleged violations of the Fourth and Fourteenth
Amendments to the United States Constitution.  In count V, which
also pertained solely to Deputy Hancock, they alleged "failure to
supervise" in violation of Alabama law.  In count II, which
applied only to Danny Belyeu Chevrolet, they alleged breach of
contract in violation of Alabama law.  In counts III, IV, VI,
VII, and IX, which applied to all of the defendants, they alleged
trespass, negligence, conversion, outrage, and conspiracy, all in
violation of Alabama law.  Finally, count VIII alleged a claim
against all the defendants under Ala.Code 6-5-370, which provides
a civil cause of action for acts that also constitute a felony.

[3]Count I also alleged that Hancock deprived the Cofields of
the equal protection of the laws in violation of the Fourteenth
Amendment.  The district court granted Hancock summary judgment
on that claim as well as the claims under the Fourth Amendment
and the Due Process Clause.  In this appeal, the Cofields do not
contest the court's disposition of their equal protection claim.

Fourth Amendment and Due Process claims. We review the district court's grant of summary judgment *de novo.* *See Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1377 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995).

## II.

"The law attending qualified immunity is well-settled." *Leeks v. Cunningham,* 997 F.2d 1330, 1333 (11th Cir.1993). Government officials enjoy immunity from civil damages provided "their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person should have known." *Id.,* citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2728, 73 L.Ed.2d 396 (1982). "For a "right' to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Rodgers v. Horsley,* 39 F.3d 308, 310 (11th Cir.1994), *citing Anderson v. Creighton,* 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Appellants theorize that the taking of the Blazer was clearly wrongful insofar as it contravened state law (i.e., that the dealership was not entitled to repossess the vehicle because the appellants had not defaulted under the sales contract). Moreover, they claim, Hancock knew the dealership was not entitled to repossess, he knew the dealership was nevertheless planning to repossess, and he helped them do so. They argue that Hancock thereby effected a "seizure" of their property in violation of the Fourth Amendment. Additionally, they argue, his participation in the taking converted what would otherwise have been an instance of

"self-help repossession" into a levying of property by a law enforcement officer without a writ of attachment, in violation of the procedural component of the Due Process Clause.

Appellant's argument fails at the first step. The Alabama Code provides that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace...." Ala.Code § 7-9-503 (1993). The Code does not define the word "default," leaving this to the parties to the security agreement and to the common law. *See* 4 James J. White & Robert S. Summers, Uniform Commercial Code § 34-2 (4th ed. 1995). In the absence of a particular definition adopted by the parties, the ordinary meaning of "default" is "failure to pay." *See* 9A Ronald A. Anderson, Uniform Commercial Code § 9-501:27 (3d ed. rev. 1994). We think it self-evident that failure of consideration, which is what occurred in this case, constitutes failure to pay.

Appellants point out that the "Sales Contract," which contains the standard default and repossession clauses, does not itself include any representation (by them) as to the age of the camper, and that the "Vehicle Invoice," which does contain such a representation, does not include any default or repossession clauses. The two documents, they argue, are wholly separate. We do not address the merits of this argument. Failure of consideration *can* constitute a default and can thereby entitle a creditor to repossess the collateral. Accordingly, it could not have been "clear" to Deputy Hancock that the repossession was

"wrongful."[4]  As noted, then, appellants' argument fails at the first step;  Hancock could not have known the taking of the Blazer was wrongful.

Appellants also suggest that a deputy sheriff simply cannot be present during an instance of self-help repossession.  Even if a repossession is lawful, they argue, if a deputy sheriff is present, that repossession becomes a "seizure" by the state.  Moreover, they contend, if he is present the repossession is no longer an instance of "self help" and, accordingly, must be preceded by judicial process.  Appellants have pointed us to no cases, and we have found no cases, that support either proposition.  *Soldal v. Cook County*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), on which appellants rely heavily, is readily distinguishable.  In *Soldal*, deputy sheriffs assisted in a forcible eviction that was patently unlawful.[5]  *Id.* at 56-60, 113 S.Ct. at 541-42.

Finally, we think it plain that an officer's mere presence during a lawful repossession is of no moment.  Indeed, arguably an officer's "mere presence to prevent a breach of the peace" would

_____

[4]Appellants point to the fact that early in the day following the repossession, Deputy Hancock returned to their house and filled out a "stolen vehicle report" for the vehicle. This, they contend, supports the proposition that he *knew* the taking was wrongful.  We are not persuaded.  The Cofields had argued strenuously—to Hancock and others—that they were not in default.  That Deputy Hancock obligingly filled out a stolen vehicle report is of no moment.

[5]Furthermore, even were *Soldal* on point, it was handed down well after the events that gave rise to this lawsuit.  Thus, even if it established that a deputy sheriff's presence at a lawful repossession somehow transforms that repossession into a Fourth Amendment "seizure," this proposition was not "clearly established" for qualified immunity purposes when the repossession in this case occurred.

not even constitute state action sufficient to give the court subject matter jurisdiction. *See Booker v. City of Atlanta,* 776 F.2d 272, 274 (11th Cir.1985). While our cases suggest that state action might be present if an officer were to facilitate a repossession, *see id., see also Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 513 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), the Cofields's own testimony places the Blazer off, or exiting, the premises by the time they reached their front door to contest the repossession. The implication is that the repossession had been completed before the Cofields had any contact with Hancock.[6]

### III.

It is anything but clear that the repossession effected by Danny Belyeu Chevrolet was unlawful. Moreover, according to appellant's own version of the facts, the repossession appears to have been completed prior to Hancock's involvement. Finally, we have found no precedent clearly holding that an officer's mere presence at (or after) a lawful instance of self-help repossession can amount to a violation of the Fourth and Fourteenth Amendments. Thus we conclude that Hancock could not have known his actions might violate anyone's constitutional rights. He is entitled to qualified immunity.

AFFIRMED.

---

[6]Moreover, of course, in *Booker* and *Soldal* we were concerned only with the requisite state action to establish subject matter jurisdiction. Neither case supports the theories of *liability* advanced by the Cofields—i.e., that an officer's presence or aid at a repossession effects a Fourth Amendment "seizure" by the state *or* that his presence or aid transforms that repossession into a "levying" of property.

GOODWIN, Senior Circuit Judge, dissenting:

When reviewing a summary judgment, we must resolve all reasonable inferences of fact in favor of the nonmoving party. *Goddard v. Urrea,* 847 F.2d 765, 767 (11th Cir.1988). Because I believe a question of material fact exists, (whether Hancock was there merely to "keep the peace"); and because the law was clearly established that a sheriff without a court order could not lawfully participate in the seizure of private property, I respectfully dissent.

The majority concludes that Hancock could not have assisted with the repossession because the Blazer was already exiting the Cofields' property at the time the Cofields reached their front door. *See* majority opinion at ----. This conclusion does not account for the assistance Hancock had already provided through his agreement to accompany the Belyeu Chevrolet employees to the Cofield house. Without the security provided by Hancock's presence, the Belyeu employees may not have been emboldened to attempt the repossession.

Hancock claims that his assistance was solely for the purpose of "keeping the peace," but that claim is contradicted by the testimony of Evans, who solicited Hancock's aid. Evans testified that he never told Hancock he was fearful of the Cofields, nor did he indicate that he wanted Hancock's presence for security purposes.

Moreover, even if Hancock had not yet assisted the repossession when the Cofields opened their door, the Cofields testified that Roy Cofield attempted to go after the Blazer as it

was being driven off. When he did so, Hancock informed Roy that if he interfered with the repossession he would be arrested. A reasonable fact finder could conclude from this evidence that Hancock did not just "keep the peace," but in fact assisted with the repossession.

If Hancock in fact participated in the repossession, his actions violated clearly established law. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." Amendment 4, Constitution of the United States.

The Supreme Court clarified the purpose of the Amendment in *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984):

> This text protects two types of expectations, one involving "searches," the other "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.

The district court found *Jacobsen* inapplicable as it was a criminal case dealing with the seizure of cocaine, and the Cofields' seizure was a private taking of personal property. However, the Fourth Amendment protects "the people," not exclusively "the criminally charged."

The defendants argued that the application of the Fourth Amendment to cases of this kind was not clearly established law until confirmed by the Supreme Court's opinion in *Soldal v. Cook County, Ill.,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). In *Soldal,* a landlord wished to remove a tenant's trailer from the trailer park for failure to pay rent. The landlord did not wish to

wait for the necessary eviction papers, and asked the sheriff's department to assist in a "self-help" eviction. The sheriff accompanied the landlord to the park, and allowed the trailer to be removed from the premises. The Court held that a "seizure" had occurred within the meaning of the Fourth Amendment, remanding the case to determine if the seizure was "reasonable."

It matters not that *Soldal* was decided after the seizure in this case. We need not wait for the Supreme Court explicitly to declare a law "clearly established" before finding its violation unprotected by qualified immunity. *Soldal* did not claim to be fashioning new law. To the contrary, the Court stated that its holding fell within a long line of precedent, including *Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652. While recognizing that a new emphasis had been placed on the amendment's protection of privacy, the Court stated "[t]here was no suggestion that this shift in emphasis had snuffed out the previously recognized protection for property under the Fourth Amendment." *Soldal,* 506 U.S. at 64, 113 S.Ct. at 545.

The majority seeks to distinguish *Soldal* because it involved a "patently unlawful" eviction. *See* majority opin. at ----. However, the comparative lawlessness of the two seizures is elusive. In both cases, legitimate civil cause existed for the seizures, but the requisite judicial process was lacking.

The availability of "self-help" repossession in the present case is of no consequence. Belyeu's apparently friendly relations with the sheriff permitted an "self-help" exercise to take on the character of augmented self-help. The relevant law provides "In

taking possession [of collateral] a secured party may proceed without judicial process *if this can be done without breach of the peace*...."  Ala.Code § 7-9-503 (1993) (emphasis added).  Once the presence of law enforcement officers is necessary, "self-help" no longer applies and judicial process is required.

Assuming the Cofields' allegations are true, an issue for the trier of fact to decide, Hancock's assistance in the repossession of the Blazer violated clearly established Fourth Amendment law. Hence, Hancock's actions are not, as a matter of law, protected by qualified immunity.

I respectfully dissent.